| | |
|---|---|
| Jeremy V. Richards (CA Bar No. 102300)<br>Jeffrey W. Dulberg (CA Bar No. 181200)<br>Scotta E. McFarland (CA Bar No. 165391)<br>J. Rudy Freeman (CA Bar No. 188032)<br>PACHULSKI STANG ZIEHL YOUNG JONES<br>   & WEINTRAUB LLP<br>10100 Santa Monica Blvd.<br>11th Floor<br>Los Angeles, California 90067-4100<br>Telephone: 310/277-6910<br>Facsimile: 310/201-0760<br><br>[Proposed] Attorneys for Debtors and<br>Debtors in Possession | ELECTRONICALLY FILED<br>ON MARCH 27, 2007 |

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>**PEOPLE'S CHOICE HOME LOAN, INC., et al.,**[1]<br><br>                        Debtors.<br><br>Fed. Tax I.D. No.: 94-3348277 | Case No.: SA 07-10765-RK<br>Chapter 11<br><br>(Jointly Administered with Case Nos.<br>SA 07-10767-RK and 07-10772-RK)<br><br>**DEBTORS' NOTICE OF MOTION AND MOTION FOR ORDER (A) AUTHORIZING BULK SALE OF MORTGAGE LOANS OWNED BY THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS; AND (B) AUTHORIZING DEBTORS TO SELL LOANS HELD BY OR FINANCED BY THIRD PARTY WAREHOUSE LENDERS UPON TERMS AND CONDITIONS TO BE NEGOTIATED AND FURTHER DISCLOSED;<br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;<br>DECLARATION OF BRAD PLANTIKO IN SUPPORT FILED CONCURRENTLY HEREWITH**<br><br>Date:   April 2, 2007<br>Time:  10:00 a.m<br>Place:  Courtroom 5D<br>         Ronald Reagan Federal Bldg.<br>         411 West Fourth Street<br>         Santa Ana, California 92701<br>Judge:  Honorable Robert N. Kwan |

**TO THE HONORABLE ROBERT N. KWAN, UNITED STATES BANKRUPTCY**

---

[1] The Debtors are People's Choice Home Loan, Inc., a Wyoming corporation, Fed. Tax I.D. No.: 94-3348277; People's Choice Funding, Inc., a Delaware corporation, Fed. Tax I.D. No.: 20-1156865; and People's Choice Financial Corporation, a Maryland corporation, Fed. Tax I.D. No.: 20-1157100.

30395-002\DOCS_LA:164743.4

**JUDGE, SECURED LENDERS, WAREHOUSE LENDERS, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that People's Choice Home Loan, Inc., a Wyoming corporation, People's Choice Funding, Inc., a Delaware corporation, and People's Choice Financial Corporation, a Maryland corporation, collectively debtors and debtors in possession (herein the "Debtors"), hereby move the Court for entry of an Order (A) Authorizing Bulk Sale Of Mortgage Loans Owned By The Debtors In The Ordinary Course Of Business; And ( B) Authorizing Debtors To Sell Loans Held By Or Financed By Third Party Warehouse Lenders Upon Terms And Conditions To Be Negotiated (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities, the accompanying Notice of Motion, the Declaration of Brad Plantiko in Support of the Motion, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, the Debtors request that the Court take judicial notice of all documents filed with the Court in these cases.

**PLEASE TAKE FURTHER NOTICE** that if you wish to object to the relief sought by the Motion, you must appear at the hearing hereon and file and serve any responsive pleading in accordance with the deadline set forth in the Court's Order On Debtors' Motion To Shorten Time filed concurrently herewith. Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

1    **WHEREFORE**, for all the foregoing reasons, and such additional reasons as may be
2    advanced at or before the hearing on this Motion, the Debtors respectfully request that this Court
3    enter an Order (A) Authorizing Bulk Sale Of Mortgage Loans Owned By The Debtors In The
4    Ordinary Course Of Business; And ( B) Authorizing Debtors To Sell Loans Held By Or Financed By
5    Third Party Warehouse Lenders Upon Terms And Conditions To Be Negotiated And Further
6    Disclosed, and granting such further relief as may be determined by the Court.

Dated:   March 27, 2007           PACHULSKI STANG ZIEHL YOUNG JONES
                                  & WEINTRAUB LLP

                                  By _____
                                     J. Rudy Freeman
                                     [Proposed] Attorneys for Debtors and
                                     Debtors in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Before March 20, 2007, the Debtors' business relied primarily on their ability to originate mortgage loans and sell or securitize those loans in the secondary mortgage market. Prior to the petition date, the Debtors were required to repurchase certain of the loans which they originally sold, based on repurchase demands and early payment defaults claimed by various warehouse lenders and/or securitization trusts. The Debtors' own these loans outright, with no obligation for payment respecting these loans to any third parties. To maximize the value of these loans for the benefit all creditors, the Debtors must sell them in the ordinary course of the business and in accordance with customary industry practice. By this Motion, the Debtors are seeking authority to sell these loans in bulk, in the ordinary course of their business.

In addition, the Debtors are also seeking authority but not direction to sell in their discretion loans held by or financed by third party warehouse lenders, upon terms and conditions to be negotiated. The Debtors hold and service loans for warehouse lenders until they are able to successfully sell same to the secondary mortgage market. As of the petition date, the Debtors held an unspecified number of these loans for third party warehouse lenders, or the lenders themselves hold title to the loans. However, by this Motion, the Debtors are only seeking a declaration that they are authorized to sell the remaining loans on behalf of the third party warehouse lenders, and will not exercise their discretion to do so unless there is a tangible net benefit that inures to the estate.

Accordingly, by this Motion, and out of an abundance of caution, the Debtors seek entry of an order (a) authorizing the bulk sale of mortgage loans owned by the debtors in the ordinary course of business; and (b) authorizing debtors to sell loans held by or financed by third party warehouse lenders upon terms and conditions to be negotiated, in their possession pursuant to section 363(c)(1) of the Bankruptcy Code. For all the reasons set forth herein, the Debtors respectfully request that the Court grant the Motion in its entirety.

## II.

## FACTS

### A. Background

On March 20, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in the Debtors' chapter 11 cases.

### B. Description of the Debtors' Business

People's Choice Financial Corporation ("PCFC"), a Maryland corporation was formed on May 5, 2004 and maintains its corporate headquarters in Irvine, California. It is a nationwide residential mortgage banking company that through its subsidiaries, People's Choice Home Loan, Inc. ("PCHLI"), a Wyoming corporation, (formed on December 29, 1999), and People's Choice Funding, Inc. ("PCFI"), a Delaware corporation (formed on May 5, 2004), originates, sells, securitizes and services single-family, non-prime residential mortgage loans. On December 28, 2004, the business was reorganized into its current structure so that it qualified as a real estate investment trust (REIT) and a private placement of the stock of PCFC was completed. PCHLI's primary function is to originate, service and sell loans. In addition, PCHLI and PCFI hold investment loan portfolios financed by mortgage backed security debt, which are publicly traded bonds.

Historically, the Debtors originated mortgage loans through both wholesale and retail channels. The Wholesale Lending Division serviced mortgage brokers by acting as a lender for their loans. The Retail Lending Division worked directly with individual borrowers; however, as of the filing of these Cases, the Debtors had commenced the wind down of the retail division activities. The Debtors originated mortgage loans in an aggregate principal amount of approximately $5.5 billion for the year ended December 31, 2006 and $5.7 billion for the year ended December 31, 2005.

The Debtors operated their wholesale origination channel through 19 branch offices and their headquarters and used a network of approximately 12,000 approved independent mortgage brokers in 44 states. The Wholesale Lending Division generated approximately 82.9% of the total mortgage loan originations for the year ended December 31, 2006 and 81.2% of the total mortgage loan originations for the year ended December 31, 2005.

The Debtors operated their retail loan origination channel in 41 states through a network of seven branches located in five states. The Retail Lending Division generated approximately 17.1% of the total mortgage loan originations for the three months ended December 31, 2006 and 18.8% of the total mortgage loan originations for the year ended December 31, 2005.

Historically, the Debtors' business relied primarily on their ability to originate mortgage loans and sell or securitize those loans in the secondary mortgage market at prices that resulted in a competitive operating margin. Generally, the Debtors would originate mortgage loans, through either the Wholesale Lending Division or the Retail Lending Division, and fund them with borrowings from warehouse lenders on a traditional lending basis or through repurchase agreements. These warehouse lines are short term facilities with maturity dates of less than one year, after origination, the Debtors pooled loans and sold them through either whole loan sales or securitizations.

The aggregate balances on the Debtors' warehouse lines net of margin call accounts as of March 16, 2007, were approximately $723 million. As a condition of the existing warehouse lines and repurchase agreements, those lenders have the right to periodically mark to market the value of the loans funded by the respective warehouse facility. To the extent these warehouse lenders identify a deficiency in the collateral securing the facility, the warehouse lenders may issue a margin call and request additional collateral to augment the value of the collateral securing the facility. The Debtors typically post cash to meet margin call requests; currently the Debtors have approximately $26.5 million on deposit in "margin call" accounts.

Commencing in March 2004, the Debtors began pooling loans for securitization and through December 2006, had completed seven securitizations pursuant to which approximately $6.7 billion in mortgage-backed securities have been issued. As part of its business and operations, the Debtors

originated certain loans and then sold these loans to certain third parties (collectively, "Loan Purchasers"). These Loan Purchasers would bundle the purchased loans and issue securities (through bankruptcy remote entities), backed by these loans and mortgages, to investors. As part of the loan sale agreements with Loan Purchasers, PCHL makes certain representation and warranties related to the loans originated and sold to the Loan Purchaser. In the event that the Loan Purchaser discovers a violation of a representation or warranty, Loan Purchasers can, in effect, put back certain loans to the Debtors and require that they repurchase said loans ("Repurchase Requests"). As of the Petition Date the Debtors estimate total gross outstanding Repurchase Requests from Loan Purchasers of $160 million.

In addition, PCHLI provides a number of servicing function roles, including the collection, consolidation and remittance of monthly principal, interest and impound payments for taxes and insurance on mortgaged properties. PCHLI typically services mortgage loans on an interim basis, from the origination date to approximately 90 days after the sale to third party loan purchasers. In addition to interim servicing, the Debtors continue to function as sub-servicer of the four securitized loan trusts the Debtors have securitized since March 2005.

C.   **Events Leading to the Bankruptcy Filing**

Several converging events resulted in the Debtors filing their voluntary chapter 11 cases, including, warehouse line liquidity issues, Repurchase Requests from Loan Purchasers, margin calls from warehouse lenders and reduced pricing for nonprime loans in the secondary market. Increased delinquency rates on mortgage loans caused a corresponding increase in the number of loans the Debtors have been required to repurchase and an increase in margin calls. At the same time, the overall non-prime market has entered a decline and the Debtors' warehouse lenders terminated funding such that the Debtors were unable to fund new mortgage loans or operate their business in the normal course. Meanwhile, PCHLI, as a sub-servicer, faced a shortfall of approximately $9.1 million (now approximately $5 million) with respect to its March 2007 remittance obligations to the securitization trusts. Mortgage Loans Owned By The Debtors Or Serviced For Third Party Warehouse Lenders and Securitization Trusts

The Debtors sell substantially all of the mortgage loans which they originate to third party warehouse lenders or securitization trusts. The mortgage loans are sold pursuant to certain loan purchase agreements that contain representations and warranties, which if breached, obligate the Debtors to repurchase the loans. Pursuant to the terms of these agreements, demands were made on the Debtors to repurchase certain loans, which they did. Once repurchased, the Debtors own the loans outright without obligation to repay any third parties. As of the petition date, the Debtors owned loans in an aggregate book value of approximately $13 million. In addition, the Debtors have received requests from certain third parties to sell loans pledged to, or owned by those third party lenders/purchasers. The Debtors seek authority to do so, upon terms and conditions (to be further disclosed) that are beneficial to the estates and their creditors.

## III.

## ARGUMENT

### A. The Debtors Are Authorized To Sell The Mortgage Loans Owned Outright By Them In Order To Maximize The Value Of These Loans For All Creditors

In the ordinary course of business, the Debtors have repurchased various loans from warehouse lenders and securitization trusts, based on repurchase demands and early payment defaults. When the Debtors repurchase these loans under the terms of their sub-servicing agreements, they own the loans outright, and free and clear of any obligation to receive or distribute payments on these loans to third party warehouse lenders. In the ordinary course of their business, the Debtors sell these loans to the secondary mortgage market after complying with repurchase demands. Accordingly, by this Motion, the Debtors seek a declaration that they are authorized pursuant to section 363(c)(1) of the Bankruptcy Code to sell these mortgage loans in the ordinary course of their business in order to maximize value for the benefit of all creditors. *See Cityscape Fin. Corp.*, 1998 U.S. Dist. LEXIS 8819 (J.P.M.L. 1998) (authorizing debtors, among other things, to sell portfolios of loans).

There is value in these loans that were repurchased by the Debtors, as they are owned free and clear of any liens or repayment obligations. In order to maximize that value, the Debtors must

1  move expeditiously to market the loans for sale on the secondary mortgage market, and seek Court
2  authority to do so out of an abundance of caution.

### B. The Debtors Are Authorized To Sell Mortgage Loans Held By Or Financed By Warehouse Lenders In Their Discretion And In The Ordinary Course Of Business If Such Sale Will Have A Net Benefit To The Estate

As set forth above, the Debtors, in the ordinary course of their business, regularly sold the loans that they originated and held for servicing (on behalf of third parties) pending sale to the secondary mortgage market. By this Motion, and out of an abundance of caution, the Debtors seek a declaration pursuant to section 363(c)(1) of the Bankruptcy Code that they are authorized in their discretion to sell the remaining loans in their possession held by or financed by various warehouse lenders, the terms of which are being negotiated. These loans were closed and funded before the Petition Date, and the Debtors' ordinary prepetition practice with respect to such loans included selling them in the secondary market on behalf of third parties. *See Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 704-05 (9th Cir. 1988) (postpetition transactions are in ordinary course of business when, among other things, they are of type that debtor commonly engaged in, or creditors reasonably expected debtor to engage in, prepetition).

To maximize the value of these loans for the benefit of all creditors, the Debtors must sell them in accordance with customary industry practices, under the supervision and control of the Bankruptcy Court. The loan agreements with the Debtors' warehouse lenders provide that the proceeds of sale are to be paid to the warehouse lenders, and the Debtors make this Motion with the express consent of Residential Funding Company, LLC, which is one of their primary warehouse lenders. The requested relief is thus necessary to allow the Debtors to maximize the recoveries to be received by creditors in this case and thus serves the rehabilitative purposes of the Bankruptcy Code as authorized pursuant to section 105(a) of the Bankruptcy Code. Courts have granted similar relief in other chapter 11 cases involving similar facts. *See In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del. 2007) (authorizing debtor to, among other things, sell in ordinary course of business any loans that are collateral for warehouse credit lines); *Cityscape Fin. Corp.*, 1998 U.S. Dist. LEXIS 8819 (J.P.M.L. 1998) (authorizing debtors, among other things, to sell

portfolios of loans). Notwithstanding, the Debtors will *only* sell the aforementioned third party loans, if in their sole determination the net benefit to the estate outweighs any liabilities, or potential liabilities associated therewith.

The Debtors expressly reserve the right to sell loans outside of the ordinary course of their business pursuant to section 363(b) of the Bankruptcy Code. Before any such sale would occur, the Debtors would (on proper application to the Court with notice to creditors and parties in interest) first obtain the Court authorization necessary to conduct such a sale outside of the ordinary course of their business.

## IV.

## CONCLUSION

**WHEREFORE,** for the reasons set forth herein, the Debtors respectfully request that the Court enter an Order authorizing bulk sale of mortgage loans owned by the Debtors in the ordinary course of business; and ( b) authorizing the Debtors to sell loans held by or financed by third party warehouse lenders upon terms and conditions to be negotiated and further disclosed.

Dated: March 27, 2007

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

By _____
Jeremy V. Richards
Jeffrey W. Dulberg
Rudy Freeman
[Proposed] Attorneys for Debtors and
Debtors in Possession

# DECLARATION OF BRAD PLANTIKO

I, Brad Plantiko, declare as follows:

1. I am over the age of eighteen years and either have personal knowledge of the facts set forth below or have obtained knowledge of such facts based upon inquiry from those working at my direction.

2. I am the Executive Vice President of Finance and Strategic Planning of People's Choice Home Loan, Inc. ("PCHL") and I am familiar with the Debtors' operations, business affairs and books and records.

3. I submit this declaration in support of the Debtors *Motion For Order (A) Authorizing Bulk Sale Of Mortgage Loans Owned By The Debtors In The Ordinary Course Of Business; And ( B) Authorizing Debtors To Sell Loans Held By Or Financed By Third Party Warehouse Lenders Upon Terms And Conditions To Be Negotiated And Further Disclosed.*

4. People's Choice Financial Corporation ("PCFC") is a nationwide mortgage banking company that through its subsidiaries, People's Choice Home Loan, Inc. ("PCHLI") and People's Choice Funding, Inc. ("PCFI"), originates, sells, securitizes and services single-family, non-prime residential mortgage loans. PCHLI's primary function is to originate, service and sell loans. The Debtors originated mortgage loans in an aggregate principal amount of approximately $5.5 billion for the year ended December 31, 2006 and $5.7 billion for the year ended December 31, 2005.

5. Historically, the Debtors' business relied primarily on their ability to originate mortgage loans and sell or securitize those loans in the secondary market at prices that resulted in a competitive operating margin. Generally, the Debtors would originate mortgage loans, through either the Wholesale Lending Division or the Retail Lending Division, and fund them with borrowings from warehouse lenders on a traditional lending basis or through repurchase agreements. These warehouse lines are short term facilities with maturity dates of less than one year. After origination, the Debtors pooled loans and sold them through either whole loan sales or securitizations.

6. The aggregate balances on the Debtors' warehouse lines net of margin call accounts as of March 16, 2007, were approximately $723 million. As a condition of the existing warehouse

lines and repurchase agreements, those lenders have the right to periodically mark to market the value of the loans funded by the respective warehouse facility. To the extent these warehouse lenders identify a deficiency in the collateral securing the facility, the warehouse lenders may issue a margin call and request additional collateral to augment the value of the collateral securing the facility. The Debtors typically post cash to meet margin call requests; currently, the Debtors have approximately $26.5 million on deposit in "margin call" accounts.

7. Commencing in March 2004, the Debtors began pooling loans for securitization and through December 2006, had completed seven securitizations pursuant to which approximately $6.7 billion in mortgage-backed securities have been issued. As part of its business and operations, the Debtors originated certain loans and then sold these loans to certain third parties (collectively, "Loan Purchasers"). These Loan Purchasers would bundle the purchased loans and issue securities (through bankruptcy remote entities), backed by these loans and mortgages, to investors. As part of the loan sale agreements with Loan Purchasers, PCHL makes certain representations and warranties related to the loans originated and sold to the Loan Purchaser. If the Loan Purchaser discovers a violation of a representation or warranty, Loan Purchasers can, in effect, put back certain loans to the Debtors and require that they repurchase said loans ("Repurchase Requests"). As of the Petition Date, the Debtors estimate total gross outstanding Repurchase Requests from Loan Purchasers of $160 million.

8. In addition, PCHLI provides a number of servicing function roles, including functioning as sub-servicer of the four securitized loan trust the Debtors have securitized since March 2005.

9. Several converging events resulted in the Debtors filing their voluntary chapter 11 cases, including, warehouse line liquidity issues, Repurchase Requests from Loan Purchasers, margin calls from warehouse lenders and reduced pricing for non-prime loans in the secondary market. Increased delinquency rates on mortgage loans caused a corresponding increase in the number of loans the Debtors have required to repurchase and an increase in margin calls. At the same time, the overall non-prime market has entered a decline, and the Debtors' warehouse lenders terminated funding such that the Debtors could not fund new mortgage loans or operate their

business in the normal course. Meanwhile, PCHLI, as a sub-servicer, faced a shortfall of approximately $9.1 million (now approximately $5 million) with respect to its March 2007 remittance obligations to the securitization trusts.

The Debtors sell substantially all of the mortgage loans which they originate to third party warehouse lenders or securitization trusts. The mortgage loans are sold pursuant to certain loan purchase agreements that contain representations and warranties, which if breached, obligate the Debtors to repurchase the loans. Pursuant to the terms of these agreements, demands were made on the Debtors to repurchase certain loans, which they did. Once repurchased, the Debtors own the loans outright without obligation to repay any third parties. As of the petition date, the Debtors owned loans in an aggregate book value of approximately $13 million. In addition, the Debtors have received requests from certain third parties to sell loans pledged to, or owned by those third party lenders/purchasers. The Debtors seek authority to do so, upon terms and conditions (to be further disclosed) that are beneficial to the estates and their creditors.

10. In the ordinary course of their business, the Debtors regularly sold the loans which they originated and/or repurchased. The Debtors want to sell the mortgage loans which they own outright in the ordinary course of their business in order to maximize value for the benefit of all creditors. In addition, the Debtors, in the ordinary course of their business, regularly sold the loans that they originated and held for servicing (on behalf of third parties) pending sale to the secondary mortgage market. By this Motion, the Debtors see authorization in their discretion to sell the remaining loans in their possession held by or financed by various warehouse lenders, the terms of which are being negotiated and will be further disclosed. The Debtors' ordinary pre-petition practice with respect to such loans included selling them in the secondary market on behalf of third parties.

11. To maximize the value of the loans owned outright by the Debtors, and held by or financed by third parties, and for the benefit of all creditors, the Debtors must sell them in accordance with customary industry practices, under the supervision and control of the Bankruptcy Court. The Debtors do not have any repayment obligations with respect to the loans they repurchased and own outright. As to the loans which they service and hold for various third parties, the loan agreements with the Debtors' warehouse lenders provide that the proceeds of sale are to be

paid to the warehouse lenders. Notwithstanding, the Debtors will only sell the loans on behalf of third party warehouse lenders if there is a net benefit that inures to the estate, and if the liabilities or potential liabilities of doing so are outweighed by the benefit derived therefrom. The Debtors therefore believe the requested relief is necessary to allow the Debtors to maximize the recoveries to be received by creditors in this case and thus serves rehabilitative purposes.

12. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this ___ day of March, 2007, at Irvine, California.

_____

Brad Plantiko
Executive Vice President of Finance and Strategic Planning

Jeremy V. Richards (CA Bar No. 1023000)
Jeffrey W. Dulberg (CA Bar No. 181200)
Scotta E. McFarland (CA Bar No. 165391)
J. Rudy Freeman (CA Bar No. 188032)
PACHULSKI STANG ZIEHL YOUNG
   JONES & WEINTRAUB LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

[Proposed] Attorneys For Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>**PEOPLE'S CHOICE HOME LOAN, INC., et al.,**[2]<br><br>Debtor.<br><br>Fed. Tax I.D. No.: 94-3348277 | Case No.: SA 07-10765-RK<br>Chapter 11<br><br>(Jointly Administered with Case Nos. SA 07-10767-RK and 07-10772-RK)<br><br>Chapter 11<br><br>**[PROPOSED] ORDER GRANTING DEBTORS' MOTION FOR ORDER (A) AUTHORIZING BULK SALE OF MORTGAGE LOANS OWNED BY THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS; AND (B) AUTHORIZING DEBTORS TO SELL LOANS HELD BY OR FINANCED BY THIRD PARTY WAREHOUSE LENDERS UPON TERMS AND CONDITIONS TO BE NEGOTIATED AND FURTHER DISCLOSED**<br><br>Date:    April 2, 2007<br>Time:   10:00 a.m.<br>Place:   Courtroom 5D<br>          Ronald Reagan Federal Building<br>          411 West Fourth Street<br>          Santa Ana, California 92701<br>Judge:  Honorable Robert Kwan |

**THIS MATTER CAME BEFORE THE COURT** to consider the Debtor's Motion For

Order (A) Authorizing Bulk Sale Of Mortgage Loans Owned By The Debtors In The Ordinary

---

[2] The Debtors are People's Choice Home Loan, Inc., a Wyoming corporation, Fed. Tax I.D. No.: 94-3348277; People's Choice Funding, Inc., a Delaware corporation, Fed. Tax I.D. No.: 20-1156865; and People's Choice Financial Corporation, a Maryland corporation, Fed. Tax ID No.: 20-1157100.

Course Of Business; And ( B) Authorizing Debtors To Sell Loans Held By Or Financed By Third Party Warehouse Lenders Upon Terms And Conditions To Be Negotiated, Memorandum Of Points And Authorities In Support; Declaration Of Brad Plantiko In Support Filed Concurrently Herewith, filed on March 27, 2007 (the "Motion") by the above-captioned debtors and debtors in possession (the "Debtors"); the Court having reviewed the Motion, and finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (c) notice of this Motion having been sufficient under the circumstances and no other or further notice is required and (d) capitalized terms not otherwise defined herein have the meanings given to them in the Motion; and having considered the Declaration of Brad Plantiko in Support of the Motion; and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on the terms and conditions set forth therein.

2. The Debtor is authorized, but not required to sell (a) in one or more bulk sales in the ordinary course of business, mortgage loans owned by the Debtors and (b) loans held by or financed by third party warehouse lenders upon terms and conditions to be negotiated and further disclosed, as requested in the Motion.

3. Nothing herein or in the Motion shall be deemed to constitute an assumption of any executory contract, whether under section 365 of the Bankruptcy Code or otherwise.

4. The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: March ___, 2007

_____
The Honorable Robert N. Kwan
United States Bankruptcy Judge